Leonard David LOGAN, Petitioner,

v.

The Honorable Homer SMITH, Presiding Judge in the District Court of Oklahoma County, and the Honorable Jon L. Hester, Special District Judge of the District Court of Oklahoma County, Respondents.

No. 54136.

Supreme Court of Oklahoma.

Oct. 23, 1979.

Cassil, Jackson, Hall & Zorn by Daniel K. Zorn, Oklahoma City, for petitioner.

Edward A. Goldman, Oklahoma City, for respondents.

HODGES, Justice.

This is an application to assume original jurisdiction and a petition for a writ of prohibition to prevent the maternal grandmother from intervening in a divorce proceeding by requesting, on her own motion, to modify custody of the children of the parties.

Allison Logan and Leonard David Logan were divorced on May 12, 1978. Custody of the parties' two children was awarded to Allison Logan. Leonard David Logan has had actual physical custody of the minor children during the past summer. The ma-ternal grandparent, Jo L. Day, filed a motion to modify on August 24, 1979, request-ing that she be granted custody of the two minors, alleging that both parents were un-fit and not proper persons to have custody of the children. The parents of the children were ordered to appear and show cause why immediate custody should not be granted to the grandmother.

At the time of the hearing, the father filed a special demurrer, alleging that the grandmother did not have legal standing to file the motion to modify and bring the action in the divorce case. The demurrer was sustained. However, an oral motion to intervene for the purpose of filing and presenting the motion to modify was sus-tained and the grandmother was permitted to intervene for the purpose of presenting her motion.

I

■ As a general rule, a third person cannot intervene in a divorce suit, but third persons whose property interests may be adversely affected may intervene to protect their rights.[1] The Oklahoma Statute, 12 O.S.1971 § 237,[2] concerning intervention, provides that interested persons may be made parties when in an action for the recovery of real or personal property any person having an interest in the property applies to be made a party.

Although either party to a divorce may make the application for modification of the decree or order to modify custody, the au-thorities differ as to whether a third person may intervene. It has been held that third persons may intervene where the parent to whom custody of the children was awarded has become unfit for the trust.[3] Under other authorities, third persons cannot in-tervene in a proceeding to modify custody order, nor may they file a motion to modify

1. *Cadwell v. Cadwell, 162 Kan. 552, 178 P.2d 266 (1947).*

2. It is provided by 12 O.S.1971 § 237:
   "When in an action for the recovery of real or personal property any person having an in-terest in the property applies to be made a party, the court may order it to be done."

3. *Stone v. Duffy, 219 Mass. 178, 106 N.E. 595 (1914).*

it.[4] A third person has no standing in court to request a modification where the statute limits the rights of the parties to the divorce action or to a party having the care, custody and control of the child.

█ This is a case of first impression in this jurisdiction. *Price v. Price,* 573 P.2d 251 (Okl.1978) is cited by the petitioner for the premise that, before parents' legal custody of children may be interfered with, it must be affirmatively shown that children come within the scope of the Juvenile Code, 10 O.S.1971 § 1101, as dependent and neglected children. It is the petitioner's contention that a third party, including a grandparent, who is not a party to the divorce action cannot attempt to obtain custody of minor children through the divorce suit and that the only remedy is through the juvenile statutes and the juvenile courts. We agree.

*Zachary v. Zachary,* 155 Or. 346, 63 P.2d 1080, 1081 (1937) involved a similar factual situation. In this case, the mother was awarded custody of the child, and the paternal grandmother sought custody by intervention by asking that the custody be modified. The Oregon Statute provides that at any time after the decree is entered, the court, upon the motion of either party, shall have the power to set aside, alter or modify so much of the decree as may provide for the appointment of trustees for the care and custody of minor children. The Oklahoma Statute, 12 O.S.Supp.1977 § 1277, provides that if there are children, the court shall make provisions for guardianship, custody, support and education of the minor children, and may modify or change any

order in this respect whenever circumstances render such change proper either before or after final judgment.

In *Zachary* the Oregon Court held that the grandmother was not a party to the divorce suit and, therefore, had no standing in court to request a modification of the divorce decree; and, further, that there was nothing in the motion to show that the minor child was a dependent, delinquent or neglected child. It held that, because the motion was not filed under the Dependent and Neglected Children's Act, it would not be considered. The court observed that had the father supported her motion then it might have been considered as a motion by the father. The Oregon Statute is dissimilar because it provides that upon the motion of either party the court has the power to modify custody, and the Oklahoma Statute provides that the court may do so on its own motion.[5] In this instance, neither parent is requesting a change in custody nor a modification of the decree.

There is no authority, statutory or otherwise, in this state which authorizes a third party to file a petition for modification of the court's judgment relative to the care and custody of children in a divorce proceeding.

█ The respondent asserts that because 10 O.S.Supp.1975 § 5[6] entitles a grandparent to enforce visitation rights, it must naturally follow that a grandparent may properly file a motion to modify custody. This is not the case. In *LeCrone v. LeCrone,* 50 OBJ 1421 (June 26, 1979) it was determined

4. Zachary v. Zachary, 155 Or. 346, 63 P.2d 1080 (1937); Prock v. Morgan, 291 S.W.2d 489 (Tex.Civ.App.1956); Schumacher v. Schumacher, 223 S.W.2d 841 (Mo.App.1949); Hupp v. Hupp, 238 Mo.App. 964, 194 S.W.2d 215 (1946).

5. See *Bishop v. Bishop,* 321 P.2d 416 (Okl. 1958).

6. It is provided by 10 O.S.Supp.1975 § 5 in pertinent part:

    ". . .

    "When both parents are deceased or if they are divorced, any grandparent, who is the par-

ent of the child's deceased or divorced parent, shall have reasonable rights of visitation to the child, when it is in the best interest of the child. The district courts are vested with jurisdiction to enforce such visitation rights and make orders relative thereto, upon the filing of a verified application for such visitation rights. Notice as ordered by the court shall be given to the person or parent having custody of said child and the venue of such action shall be in the county of the residence of such person or parent."

    ". . ."

that 12 O.S.Supp.1977 § 1277 controls insofar as child support provisions are concerned over the provisions of 10 O.S.Supp. 1975 § 4 concerning child support. The *LeCrone* rationale is applicable in this instance because § 1277 also relates to modification of custody.

The Juvenile Code, 10 O.S.1971 § 1101, et seq., provides a method whereby a child who is ill-treated or whose health or morals are in danger by cruel treatment, neglect, immorality, or gross misconduct of its parents, may be protected. Until the Legislature directs otherwise, this is the method which should have been followed.

ORIGINAL JURISDICTION ASSUMED.
WRIT OF PROHIBITION GRANTED.

LAVENDER, C. J., and WILLIAMS, BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

IRWIN, V. C. J., and OPALA, J., dissent.

OPALA, Justice, dissenting:

The narrow first-impression question before us is whether the district court should be prohibited from allowing a grandparent to intervene, in a post-decree stage of a divorce suit, to seek custody of the dissolved union's minor offspring based on extremely serious allegations of parental misconduct and unfitness. The court's pronouncement today bars the intervention and relegates the grandparent to the Children's Code [1] as affording exclusive avenue for redress. I am unable to join the court's view.

1. 10 O.S.Supp.1979 § 1101 et seq.

2. The provisions of 10 O.S.1971 § 9 are:
"The abuse of parental authority is the subject of judicial cognizance in a civil action in the district court brought by the child, or by its relatives within the third degree, or by the officers of the poor where the child resides; and when the abuse is established, the child may be freed from the dominion of the parent, and the duty of support and education enforced."

3. The terms of 10 O.S.Supp.1978 § 5 provide in pertinent part:

Grandparents do indeed have standing, as relatives in the third degree, to litigate with the parents *any controversy over the welfare* of the minor issue. That right is given them by the terms of 10 O.S.1971 § 9.[2] Within the framework of that statute grandparents may seek a district court order freeing their issue, wholly or partly, from the dominion of the parents and enforcing the duty of support. The fact that grandparents assert this right of redress not in an independent action but rather by a plea in intervention filed in the post-degree stages of a divorce action should be of no significance in a proceeding for a writ of prohibition. Prohibition will not lie for *erroneous application* of the law where the district court does clearly have jurisdiction of the subject-matter of the action and of the parties thereto. *Spradling v. Hudson*, 45 Okl. 767, 146 P. 588 [1915]; *School Dist. No. 20 v. Walden*, 146 Okl. 19, 293 P. 199, 203 [1930].

There are two other reasons why prohibition does not appear to be appropriate in this case. First, the grandparents have *express statutory standing*, in post-decree stages, to litigate with the divorced parents *the issue of access* to their offspring, including custodial visitation.[3] Second, even if the Juvenile or Children's Code did afford the grandparents exclusive remedy, the respondent-judge's allowance of intervention or failure to order the matter transferred would constitute no more than erroneous assumption of authority for which prohibition cannot issue. *Spradling v. Hudson*, supra.

" * * * When both parents are deceased or if they are divorced, any grandparent, who is the parent of the child's deceased or divorced parent, shall have *reasonable rights of visitation* to the child, when it is in the best interest of the child. The district courts are vested with jurisdiction to enforce such visitation rights and make orders relative thereto, upon the filing of a verified application for such visitation rights * * *" [emphasis added]
"Reasonable visitation", as a statutory term, is sufficiently broad to include custodial rights. *English v. Macon*, 46 Ala.App. 81, 238 So.2d 733, 739 [1970].

By our Constitution, Art. 7 § 7(a) the district court is a single, indivisible integrity with "unlimited original jurisdiction of all justiciable matters . . ." [4] If we are to remain true of our fundamental law's mandate for an omnicompetent single-level trial court, we cannot regard ourselves free to chop up that tribunal into rigidly divided compartments by tightly restricting inter-divisional flow of cases. Prohibition operates here to inject mechanistic boundary lines between various permissible remedies. It returns us to the pre-1969 state of jurisdictional fragmentation by paralyzing the present system's flexibility of internal case-flow management.

The juvenile division to which the grandparent here is incorrectly relegated is not a separate court but rather one of the statutory dockets of the district court. 20 O.S. 1971 § 91.2. The district court itself is not without authority to hear the grandparent's plea for custodial visitation or for full custody. More than one of its divisions may do so. I would hence deny the writ or refuse to assume original jurisdiction.

I am authorized to state that IRWIN, V. C. J., concurs in this view.

---

4. In *Tubby v. Tubby*, 202 Cal. 272, 260 P. 294, 296 [1927], the court expressed itself in the following language concerning the jurisdictional integrity of the superior court:

"There is only one superior court in the city and county of San Francisco. * * * *Jurisdiction is vested by the Constitution in the court, not in a particular judge or department.* It further provides that there may be as many sessions of the court as there are judges. Whether sitting separately or together, *the judges hold but one and the same court. The division into departments is for the convenient dispatch of business.*" [emphasis added]

This expression aptly describes the jurisdictional sweep in the institutional design of our district court.