Argued September 25, affirmed October 8, 1952

In the Matter of the Application of
Jean Bristol Quinn for a Writ of Habeas Corpus

QUINN *v.* HANKS
STATE ex rel. QUINN *v.* HANKS
248 P. 2d 832

*Allan G. Carson,* of Salem, argued the cause for appellants. With him on the brief was Wallace P. Carson, of Salem.

*Joseph M. Devers, Jr.,* of Stayton, argued the cause for respondent Quinn. With him on the brief was Walter H. Bell, of Stayton.

· Before BRAND, Chief Justice, and ROSSMAN, LUSK, WARNER and TOOZE, Justices.

TOOZE, J.

Defendants Julia A. Hanks and Carlos B. Hanks appeal from a judgment of the circuit court for Marion county, adjudging them, and each of them, guilty of contempt of court.

This matter arises out of a habeas corpus proceeding commenced in the circuit court for Marion county on May 11, 1950, by Jean Bristol Quinn, as plaintiff, against Julia A. Hanks and Carlos B. Hanks, as defendants, and involves the custody of Judy Jean Bristol, infant daughter of Jean Bristol Quinn and her former husband, Jack Bristol.

The record in the habeas corpus proceedings shows that Jean Bristol Quinn and Jack Bristol were married at Vancouver, Washington, on November 2, 1942. On October 2, 1943, Judy Jean Bristol was born as the lawful issue of that marriage. On February 7, 1944, Jean Bristol (now Quinn), as plaintiff, filed suit for divorce against Jack Bristol, as defendant, in the circuit court for Clackamas county, Oregon. Defendant Jack Bristol defaulted in that suit. On February 21,

1944, a decree of divorce was duly entered of record in said circuit court in favor of the plaintiff therein. By said decree the custody of Judy Jean Bristol was awarded to the defendant herein, Julia A. Hanks, subject to further order of the court. On August 14, 1945, pursuant to the application of plaintiff in the divorce suit, the circuit court for Clackamas county entered an order modifying its decree of February 21, 1944, respecting the custody of the minor child, as follows: "That the custody of the minor child born as a result of the marriage of the parties hereto be and the same is hereby transferred to the plaintiff, subject only to the objection or consent thereto of the father, upon his return from services in the armed forces of the United States; or until further order of this court * *."

Jean Bristol Quinn demanded custody of the minor child from the defendants Julia A. Hanks and Carlos B. Hanks. Her demand was refused, and the proceedings by habeas corpus were instituted. In those proceedings Jean Bristol Quinn based her right to custody upon the modification decree of August 14, 1945, although under the pleadings as finally completed and upon which the case was tried, the question of the welfare and best interests of the child was submitted to the court for determination.

Upon the trial of the habeas corpus proceeding, most of the evidence was directed to the question of the welfare of the child, though duly certified copies of the decrees of the circuit court for Clackamas county were offered and received. Upon the conclusion of that trial, a decree was entered in favor of the plaintiff Jean Bristol Quinn, which partially provides:

"It further appearing to the Court after trial of said issues and the hearing of said evidence that

the evidence does establish said petitioner Jean Bristol Quinn is a fit and proper person to have the care and custody of said minor child Judy Jean Bristol, the natural child of the petitioner herein, and that the evidence does not establish the allegations of the answer of respondents that said petitioner is not such a fit and proper person to have the future care, custody and control of said minor child, Judy Jean Bristol, and

"Further finding that said petitioner Jean Bristol Quinn is a fit and proper person to have the future care, custody and control of said minor child Judy Jean Bristol, and that it is just and proper, and to the best interests of said minor child, and of society, and of the State, that said petitioner have the future care, custody and control of said minor child, Judy Jean Bristol, and

"Further finding that the Petition for Juvenile Dependency on file herein with the Court has been denied.

"IT IS CONSIDERED, ORDERED AND ADJUDGED that the petitioner Jean Bristol Quinn hereby is awarded the custody of the minor child, Judy Jean Bristol, and respondents, Julia Hanks and Carlos B. Hanks are hereby directed and required to forthwith and without delay deliver said minor child to the custody and possession of petitioner Jean Bristol Quinn.

"IT IS FURTHER ORDERED AND ADJUDGED that at the time of issuing said writ and thereafter said minor child Judy Jean Bristol was and is unlawfully detained by respondents Julia A. Hanks and Carlos B. Hanks at Route 1, Box 86, (Hobart Road), Silverton, Oregon."

The defendants Julia A. Hanks and Carlos B. Hanks appealed from that decree. On June 27, 1951, this court handed down an opinion which affirmed the decree of the circuit court. A petition for rehearing filed by defendants was denied on August 14, 1951. *Quinn v. Hanks*, 192 Or 254, 233 P2d 767.

Based upon this opinion, a mandate was issued out of this court on August 25, 1951, and, on August 30, 1951, the circuit court for Marion county caused said mandate to be entered in that court by a decree which, in part, reads as follows:

"This matter coming on regularly and based upon a hearing on June 13, 1951, in the Supreme Court of the State of Oregon and a decree rendered June 27, 1951; and

"It appearing further that a mandate and a copy of said decree of the Supreme Court of the State of Oregon bearing date of August 25, 1951, having been filed with the Clerk of the Court of Marion County, Oregon, on August 27, 1951, and which said decree and mandate provided that the decision of the Circuit Court of Marion County is in all things affirmed, and directing that a decree be entered in accordance with said Supreme Court decree and mandate; and the court being fully advised in the premises;

"IT IS THEREFORE, ORDERED AND DECREED that the decree of the Circuit Court of Marion County heretofore entered and appearing in the judgment Journal of Marion County, Oregon in Vol. 87 at page 268 is hereby affirmed and in all things ratified in accordance with the mandate of the Supreme Court of the State of Oregon under date of August 25, 1951, and said decree is to have the same effect as having been re-entered herein and as if said decree were extended at length herein.

"IT IS FURTHER ORDERED that the defendants, Julia A. Hanks and Carlos B. Hanks, deliver the person and custody of the minor child, Judy Jean Bristol, to the Juvenile Officer of this court on or before the hour of 12:00 noon, Tuesday, September 4, 1951.

"IT IS FURTHER ORDERED that the Juvenile Officer of this court, upon receiving possession of the person of said minor child, Judy Jean Bristol, shall forthwith deliver said minor child

into the custody of the plaintiff herein, Jean Bristol Quinn.''

Defendants failed and refused to deliver the person and custody of said minor child as directed by said decree, and, on September 6, 1951, the plaintiff Jean Bristol Quinn filed in said court and cause an affidavit and her motion for an order directed to said defendants and ordering them to appear and show cause why they should not be adjudged guilty of contempt. On September 6, 1951 an order to show cause was duly issued out of said court and directed to the defendants, and, on the same day, personal service thereof, together with a copy of the affidavit and motion, was had upon defendants. The order to show cause provided in part:

"IT IS, THEREFORE, ORDERED BY THE COURT: That the defendants, Julia A. Hanks and Carlos B. Hanks, be, and they are hereby directed, ordered and required to appear before this Court at the Court Room of this Court in the County Courthouse at Salem, in Marion County, Oregon, on the 17th day of September, 1951, at the hour of 2:00 o'clock P. M. of said day, and at said time, then and there to show cause, if any they have, why an order should not be made adjudging them to be guilty of contempt for violating and disobeying the decree of this Court made, and entered in the above entitled Court on or about the 30th day of August, 1951, requiring said defendants, Julia A. Hanks and Carlos B. Hanks, to deliver the person and custody of the minor child, Judy Jean Bristol, to the Juvenile Officer of this court on or before the hour of 12:00 noon, Tuesday, September 4, 1951.

"IT IS FURTHER ORDERED that at the time and place of said hearing above set forth said defendants, Julia A. Hanks and Carlos B. Hanks, produce and have in person present said minor child, Judy Jean Bristol, in the Court Room of Marion County, Salem, Oregon.''

On September 14, 1951, the defendants filed in said court and proceeding the following motion:

"Defendants HANKS move the court for an order herein vacating that part of the order given and made herein on 06 September 1951 and filed and entered of record herein on 13 September 1951 which reads as follows:

'IT IS FURTHER ORDERED that at the time and place of said hearing above set forth said defendants, Julia A. Hanks and Carlos B. Hanks, produce and have in person present said minor child, Judy Jean Bristol, in the Court Room of Marion County, Salem, Oregon.',

on the ground and for the reason that neither the judge who gave and made said order nor this court had or has any jurisdiction, power or authority in a proceeding for contempt to give or make any such mandate, and that said part of said order to show cause therefore is wholly without warrant in law and void."

On September 17, 1951, the court entered an order denying the foregoing motion. On September 20, 1951, defendants filed what is denominated an "Answer and Showing of Cause", accompanied by an affidavit of Allan G. Carson, their attorney, which sets forth in detail a record of certain proceedings which it is alleged occurred in the circuit court for Clackamas county in the divorce suit, subsequent to our determination in the habeas corpus proceeding. Defendants also moved to stay the contempt proceedings on the same grounds.

The contempt proceedings came on for hearing before the trial court on September 22, 1951. Defendants appeared in person and by their attorney, but did not produce the child in court. After hearing, the

following judgment (omitting formal parts) was duly entered.

"It appearing to the court that the defendants were cited to appear before the court at 9:30 A. M., Saturday, September 22, 1951, to show cause why they should not be held in contempt of court for failure to comply with an order of the above entitled court entered on the 31st day of August, 1951, and, particularly, that part of the order requiring said defendants to deliver the person and custody of the minor child, JUDY JEAN BRISTOL, to the juvenile officer of this court on or before 12:00 o'clock noon, Tuesday, September 4, 1951.

"THE COURT FINDS as a fact that the defendants did fail to comply with that portion of the order.

"THE COURT FURTHER FINDS that the court had complete jurisdiction to enter the order and finds that for failure to comply with the order that defendants are in contempt of this court.

"THE COURT FURTHER FINDS that by virtue and by reason of that contempt, the other party, plaintiff in the habeas corpus proceeding, has been deprived of a right which she had under the decree of this court which then subjects the defendants to punishment for contempt.

"THE COURT FURTHER FINDS that defendants' motion to stay these proceedings is not well taken and should be denied.

"IT IS, THEREFORE, ORDERED that the defendants be and they hereby are adjudicated in contempt of this court.

"IT IS FURTHER ORDERED that the defendants, JULIA A. HANKS and CARLOS B. HANKS are sentenced to ten (10) days in the County Jail of Marion County, Oregon, and in addition thereto, shall each pay a fine of $100.00.

"IT IS FURTHER ORDERED that the defendants, JULIA A. HANKS and CARLOS B. HANKS, may purge themselves of this sentence and

fine by complying with the decree of this court which they, said defendants, have failed to comply with, by Friday, the 28th day of September, 1951, at 12:00 o'clock noon.

"IT IS FURTHER ORDERED that if they, the said defendants, have not complied with said order by said time, then it is the order of this court that a warrant issue directed to the Sheriff of Marion County for the arrest of the defendants, JULIA A. HANKS and CARLOS B. HANKS.

"IT IS FURTHER ORDERED that defendants' motion to stay is hereby denied."

In our opinion in *Quinn v. Hanks,* supra, we said that Judy Jean Bristol became a ward of the circuit court of Clackamas county in the divorce suit. We also said that the jurisdiction of that court over the custody and maintenance of said child is a continuing jurisdiction. We further said that only that court had the authority to inquire into and determine the question of what the best interests and welfare of the child demanded. We made these comments because the circuit court for Marion county had assumed in the habeas corpus proceeding to pass upon the question of the child's welfare. But the record in the habeas corpus proceedings, both by the pleadings and the evidence, disclosed that, under the decree of the circuit court for Clackamas county entered in August, 1945, custody of the child had been transferred from the defendants to the plaintiff Jean Bristol Quinn.

The subject matter of the proceeding in habeas corpus was the right to the custody of Judy Jean Bristol. Defendants had actual custody. Plaintiff claimed the legal right to such custody as against defendants. It is manifest that the circuit court for Marion county had jurisdiction over the subject matter, as well as over all interested and necessary parties.

In determining the legality of the child's restraint by defendants, it was necessary for the court to consider the decrees of the circuit court of Clackamas county in the divorce suit and, in particular, the modification decree of August 14, 1945.

In our opinion on appeal we noted that the decrees of the Clackamas county court were subject to collateral attack. We indicated that such decrees, if for any reason void, might be attacked in a habeas corpus proceeding. But we observed that defendants had not alleged in their return to the writ of habeas corpus, nor had they proved, or attempted to prove, any defect in the jurisdiction of the Clackamas county court in connection with the modification decree, upon which plaintiff based her claim to custody. We said that, if defendants had desired to attack the jurisdiction of the circuit court for Clackamas county in the divorce suit, it was incumbent upon them to allege and prove lack of jurisdiction. This they had failed to do. We concluded, based upon the record before us, that the circuit court for Clackamas county had jurisdiction to make such modification, and that its order in that respect was valid on its face. We invited attention to certain statutory presumptions (§ 2-407, subd. 15, 16, and 17, OCLA) and concluded: "In the absence of a contrary showing, these presumptions are sufficient to uphold the validity of the decrees of the Clackamas county circuit court."

As between the plaintiff Jean Bristol Quinn and the defendants Julia A. Hanks and Carlos B. Hanks, this holding by the court was final and conclusive. Under the modification decree of August 14, 1945, the plaintiff was entitled to the custody of her minor child as against the defendants. In that regard this court determined as follows: "When the decree of the

Clackamas county circuit court was modified so as to transfer custody of the child to plaintiff, the retaining of custody thereafter by defendants, after having notice of such modification, and after plaintiff demanded custody, was in defiance of the lawful orders of that court, and the restraint by them of said child was illegal."

Inasmuch as the trial court had awarded custody to plaintiff, that being the result it necessarily would have been compelled to reach had it treated the case as a special proceeding under the statute governing the writ of habeas corpus, as we treated it, we affirmed its decree.

Jack Bristol, defendant in the divorce suit, was not a party to the habeas corpus proceeding and, of course, had no standing or rights to be protected therein. Whatever rights he may have had as father of the child and as defendant in the divorce suit could be exercised by him, if at all, in the divorce court. No later action of his could in any manner affect the final decree in the habeas corpus proceeding as between the plaintiff therein and these defendants.

Defendants were not parties to the divorce suit and had no standing therein, except as temporary custodians of the child under the provisions of the divorce decree. *Zachary v. Zachary* 155 Or 346, 349, 63 P2d 1080. Those provisions were written into the decree at the request of the mother of the child, the plaintiff in the divorce suit. Defendants assumed custody with knowledge of the divorce court's continuing jurisdiction over its ward and of the authority of that court to modify its decree as to custody at any time upon motion of either party to the divorce suit. Defendants possessed no natural rights respecting such custody as against either the mother or father of the child.

■ In the habeas corpus proceeding defendants had their day in court. When the mandate issued out of this court and, based thereon, the decree was entered in the circuit court for Marion county directing defendants to surrender custody of the minor child to plaintiff, they had no alternative but to comply with the decree. It was a final decree by a court having jurisdiction over the persons and the subject matter. 5 CJS, Appeal and Error, 1499, § 1964. The violation of this decree by defendants constituted contempt of court. That such violation was wilful is clearly established by the record.

We will briefly consider the reasons assigned by defendants for their refusal to abide by the provisions of the final decree in the habeas corpus proceedings. The record relied upon by defendants in their endeavor to avoid the consequences of that decree is almost fantastic. The records of this court, so far as we have been able to learn, offer no precedent for the most unusual proceedings that followed immediately upon the heels of our opinion.

Before discussing this matter, we note briefly some things disclosed to us by the record in the habeas corpus proceeding in this court. As a witness for plaintiff, Jack Bristol testified that, in October or November, 1945, and after his discharge from the service (army), he was shown a copy of the modification order of August 14, 1945, and approved it. In March 1946, he signed a formal written consent to the custody of the child by plaintiff, which consent was entitled in the divorce proceeding, though it was not filed in that court and suit until September 14, 1951. He also testified that, in his opinion, the mother should have the custody of her child, and that the child's best interest and welfare so demanded.

As before observed, our opinion in *Quinn v. Hanks,* supra, was handed down on June 27, 1951. On July 2, 1951, Jack Bristol caused to be filed in the divorce suit a motion, supported by his affidavit, asking that the modification decree of August 14, 1945, be annulled and vacated "for the reason that said purported order was subscribed by the judge of said court and so filed and entered wholly without any notice to, the affording of any opportunity to be heard to, or any knowledge of, defendant or any attorney for him, and without his consent and against his will, and therefore is void."

This motion was not served upon the plaintiff in the divorce suit, and, without any further showing, the trial court on said July 2 entered an ex parte order sustaining said motion and annulling, vacating, and expunging said modification decree of August 14, 1945. We need not decide whether, under the circumstances, the trial court had jurisdiction to enter its ex parte order.

On August 7, 1951, there was filed in this court in the habeas corpus proceeding a "Motion for order of Reversal and Dismissal", supported by the affidavit of defendants' attorney. This affidavit set forth all the proceedings in the divorce suit, including the motion, affidavit, and order of July 2, 1951. In part, the motion of appellants consisted of the following: "Appellants move the Court for an order herein reversing the decree below herein and dismissing this suit, or remanding this suit to the court below from which it came, with specific directions to set aside and vacate said decree and dismiss this suit, on the ground and for the reason that, by reason of a change in the state of facts herein which has supervened since the decree below was entered, justice now requires such disposition of this suit." We denied the motion.

Thereafter, and on September 4, 1951, plaintiff in the divorce suit, Jean Bristol Quinn, filed a motion in the Clackamas county circuit court, to annul, vacate, expunge and purge the record of the order of that court of July 2, on the ground that the order was entered wholly without any notice to, the affording of any opportunity to be heard to, or any knowledge of, plaintiff or her attorney, and without her consent and against her will. This motion was supported by affidavit of plaintiff's attorney, to which affidavit was attached and made a part thereof, the written consent executed by Jack Bristol on March 18, 1946, as hereinabove mentioned. Personal service of the motion and affidavit were made upon Jack Bristol, and he appeared by filing his affidavit in opposition thereto. In his affidavit he admitted executing the written consent, but stated: "in so signing said consent, I was, by said plaintiff given to understand and believe, that said document was to be used by said plaintiff in connection with an application to be made by said plaintiff in the future immediate thereto to gain the custody of said child, and I had no understanding or belief that said 'Consent' expressed any other intent or purpose * * *."

It is noted that in neither his affidavit of July 2, nor in his later affidavit filed in opposition to plaintiff's motion, did Jack Bristol ask that custody of said minor child be awarded to him.

The record is conclusive that Jack Bristol had no personal interest in the matter, but was simply being used as a cat's-paw in an attempt to pull defendants' chestnuts out of the fire.

On September 21, 1951, the trial court held a hearing upon plaintiff's motion, the parties appearing in person and by their attorneys. After such hearing, and on

September 21, 1951, the circuit court for Clackamas county entered an order annulling, vacating, and revoking its ex parte order of July 2 and decreeing as follows: "That the order of August 14th, 1945, is by this order reinstated [sic] and the custody of the minor child of the parties hereto is hereby declared to be vested in the plaintiff."

■ It is axiomatic that the circuit court for Clackamas county could not, by ex parte order, or otherwise, in effect reverse, vacate, or render nugatory a final determination by this court. In the habeas corpus proceeding, no federal question being involved, this was the court of last resort. Our decision upon the issues before us was final and binding upon the parties and not subject to impeachment in any court. 5 CJS, Appeal and Error, 1339, § 1857.

We need not discuss the effect of the decree of the Clackamas county circuit court entered September 21, after a hearing, and with the parties to the divorce suit before it, but we do note the following significant provision thereof; "and the custody of the minor child of the parties hereto is hereby declared to be vested in the plaintiff."

That is the record, but, as before pointed out, it is of no avail to defendants in the case now before us.

In what we have said, we do not wish to be understood as implying that the minor child in question has ceased to be a ward of the divorce court, or that that court's exclusive and continuing jurisdiction over the custody and welfare of said child is in any way affected.

Inasmuch as more than one year has elapsed since defendants were ordered to deliver custody of said child to her mother, and further delay in carrying out

the original decree of this court will unquestionably work to the detriment of the child, we are of the opinion that the mandate in this case should go down immediately upon the filing of this opinion, and it is so ordered.

The judgment is affirmed.